**Arguelles v Hunter Roberts Constr. Group, LLC**

2025 NY Slip Op 32459(U)

July 11, 2025

Supreme Court, New York County

Docket Number: Index No. 158479/2019

Judge: Leticia M. Ramirez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    __HON. LETICIA M. RAMIREZ__            PART        29

*Justice*

-----------------------------------------------------------------------X

ANTHONY ARGUELLES,

                    Plaintiff,

        - v -

HUNTER ROBERTS CONSTRUCTION GROUP, LLC, SOUTH
STREET SEAPORT LIMITED PARTNERSHIP, SEAPORT
MANAGEMENT DEVELOPMENT COMPANY, LLC, THE
HOWARD    HUGHES    CORPORATION,    CROSS
MANAGEMENT CORP. and GTL CONSTRUCTION, LLC,

                    Defendants.

-----------------------------------------------------------------------X

SOUTH STREET SEAPORT LIMITED PARTNERSHIP, SEAPORT
MANAGEMENT DEVELOPMENT COMPANY, LLC and THE
HOWARD HUGHES CORPORATION,

                Third-Party Plaintiff,
            -against-

NEP IMAGE GROUP, LLC and NATIONAL ACOUSTICS, LLC,

                Third-Party Defendants.

-----------------------------------------------------------------------X

NEP IMAGE GROUP, LLC,

                Second Third-Plaintiff,
            -against-

CROSS MANAGEMENT CORP. and NATIONAL ACOUSTICS
LLC,

                Second Third-Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 158479/2019 |
| MOTION DATE | 08/28/2024 |
| MOTION SEQ. NO. | 008 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595305/2020

Second Third-Party
Index No. 595900/2020

The following e-filed documents, listed by NYSCEF document number (Motion 008) 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 497, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Defendants/Third-Party Plaintiffs South Street Seaport Limited Partnership, Seaport Management Development Company, LLC, and The Howard Hughes Corporation (hereinafter "Moving Defendants") move pre-Note of Issue pursuant to *CPLR § 3212* for an Order dismissing plaintiff's negligence and *Labor Law § 200* claims against them. The Moving Defendants also seek summary judgment against co-defendant Hunter Roberts Construction Group, LLC (hereinafter "Hunter Roberts") and Defendant/Third-Party Defendant NEP Image Group, LLC (hereinafter "NEP") on their claims for contractual indemnification. The plaintiff, Hunter Roberts, and NEP oppose the motion.

Plaintiff commenced this action on August 30, 2019, to recover for personal injuries allegedly sustained on October 18, 2017, when he was caused to fall from a six-foot ladder while performing drywall

work at 89 South Street, Pier 17, located in New York (hereinafter, the "Pier 17 premises"). Plaintiff's accident occurred when the front legs of his ladder punctured the caulking material in the expansion joint where he had placed the ladder to perform his work, causing him to fall. To recover for his injuries, plaintiff asserted claims under *Labor Law §§ 200, 240(1)*, and *241(6)* against the defendants[1]. Issue was joined by South Street and Seaport Management on October 2, 2019 (NYSCEF Doc. #9). On January 7, 2020, Cross Management filed its Answer to the complaint (NYSCEF Doc. #42) and on February 26, 2020, Defendant GTL Construction, LLC (hereinafter "GTL") filed its Answer, asserting crossclaims against all co-defendants (NYSCEF Doc. #57). On March 18, 2020, Howard Hughes joined issue by filing an Answer, asserting cross-claims against Hunter Roberts, GTL, and Cross Management (NYSCEF Doc. #60). This matter's preliminary conference was held on May 5, 2020 (NYSCEF Doc. #63), and thereafter, on May 20, 2020, Hunter Roberts filed its Answer, asserting crossclaims against Cross Management and GTL (NYSCEF Doc. #64).

On May 26, 2020, the Moving Defendants commenced a third-party action against NEP and National Acoustics asserting claims for, *inter alia*, indemnification, duty to defend, and failure to procure insurance. NEP then filed its Answer to the third-party complaint on July 15, 2020 (NYSCEF Doc. #70) and subsequently commenced a second third-party complaint against Cross Management and National Acoustics on November 2, 2020 (NYSCEF Doc. #77). In turn, National Acoustics filed its Answers to the third-party and second third-party complaints on January 13th and January 14, 2021 (NYSCEF Docs. #85 and 87) and, on September 9, 2021, Cross Management filed an Answer to NEP's Second Third-Party Complaint (NYSCEF Doc. #236)[2].

Now, the Moving Defendants have filed this pre-Note of Issue motion for an Order granting them summary judgment on plaintiff's common-law negligence and *Labor Law § 200* claims and on their claims for contractual indemnification against Hunter Roberts and NEP.

### A. *Dismissal of Common-Law Negligence and Labor Law § 200 Claims*

Moving Defendants argue that they're entitled to summary judgment on plaintiff's common-law negligence and *Labor Law § 200* claims, alleging that they cannot be liable for plaintiff's injury based on their lack of supervision or control over the work that led to plaintiff's injury.

In opposition, plaintiff argues that this is not a "means and methods" case, rather a "dangerous condition" case where the premises defect that caused plaintiff's accident pre-dated his accident and plaintiff's injury was not derived from any work being performed on the expansion joint where plaintiff's accident occurred. Plaintiff further argues that this Court has already established that there is an issue of fact whether the caulking or filler used by Hunter Roberts to seal the expansion joint created a trap-like condition (NYSCEF Doc. #)[3].

---

[1] According to the deposition testimony of Senior Vice President of Development for Howard Hughes, George Giaquinto, the Pier 17 premises is owned by the City of New York, and South Street Seaport Limited Partnership (hereinafter, "South Street") is the leaseholder (NYSCEF Doc. #490). South Street has an agreement with Seaport Management Development Company, LLC (hereinafter, "Seaport Management") for the premises' development. The Howard Hughes Corporation (hereinafter "Howard Hughes") is South Street's and Seaport Management's overriding corporate entity. In turn, Seaport Management hired Hunter Roberts as the general contractor to build the pier and the building that sat on it. Once Hunter Roberts completed its work on the premises, South Street leased a portion of the third floor to NEP. NEP thereafter hired Cross Management Corp. (hereinafter "Cross Management") as the general contractor to construct the space, and Cross Management hired plaintiff's employer, National Acoustics LLC (hereinafter "National Acoustics"), as a subcontractor to perform the drywall work in the leased premises.

[2] Due to the extensive procedural history and motion practice in this matter, the Court incorporates the same by reference.

[3] *See,* Hunter Roberts' motion for summary judgment under Motion Sequence #3 (NYSCEF Docs. #88-110). Therein, Hunter Roberts sought to dismiss plaintiff's complaint and all crossclaims against it, arguing that it could not be held liable for plaintiff's accident because the construction work it had performed on the premises had been completed more than two months prior to plaintiff's accident. It admitted sealing and/or caulking the area where plaintiff's accident occurred as mandated by the parties' agreement, but it contended that, because this work had been completed two months prior to plaintiff's accident, it had no further obligations for that area after the

**158479/2019  ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION**                    Page 2 of 8
**Motion No.  008**

In reply, the Moving Defendants argue that this case indeed falls within the "means and methods" category of cases in light of *Murphy v. 80 Pine, LLC*, 208 A.D.3d 492, 173 N.Y.S.3d 552 (2nd Dept. 2022), arguing that it supports their position that a condition created on a construction project by a contractor other than an injured worker's employer may still be governed by the means and methods standard.

To prevail on a motion for summary judgment, the moving party must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor (*Winegard v. New York Univ. Med. Ctf.*, 64 N.Y.2d 861 [1985]; *Zuckerman v. City of New York*, 49 N.Y.2d 557 [1980]). Absent such prima facie showing, the motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v. Prospect Hospital*, 68 N.Y.2d 320, 324 [1984]). However, "[o]nce the movant makes the required showing, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial" (*Dallas-Stephenson v. Waisman*, 39 A.D.3d 303, 306 [1st Dept. 2007], citing *Alvarez*, 68 N.Y2d. at 324).

*Labor Law § 200* "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505, 618 NE2d 82, 601 NYS2d 49 [1993]). "Claims for personal injury under the statute and the common law fall into two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-144, 950 NYS2d 35 [1st Dept 2012]). "Where ... the accident arises ... from a dangerous premises condition, a property owner is liable under Labor Law § 200 when the owner created the dangerous condition ... or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9, 919 NYS2d 129 [1st Dept 2011] [internal quotation marks omitted]).

On January 21, 2022, the deposition of Joseph Honan was held. Mr. Honan was Hunter Roberts' Project Manager at the Pier 17 premises construction project (See Joseph Honan Deposition, NYSCEF Doc. 488, 15:3-6). His responsibilities included overseeing Hunter Roberts' work and ensuring it complied with its contractual obligations (*Id.* 15:7-13). The Moving Defendants hired Hunter Roberts as the construction manager to build a new pier and a new building on it (*Id.* (*Id.* 20:13-19; 20:25-21:5; 21:23-25). Specifically, Hunter Roberts was required to build the pier as an empty shell with "utilities, back bones, ..., elevators, escalators, core and shell at the outside pier work [and] [t]he interiors of the buildings were left core and shell, concrete slab ..." (*Id.* 49:2-13). Hunter Roberts subcontracted the work to trades to perform the actual labor (*Id.* 50:14-20). Hunter Roberts—including its subcontractors—installed the expansion joints and its materials into the expansion joints (*Id.* 52:7-16; 55:8-56:4). The purpose of the material inside the expansion joints is fire-safing to avoid fire from traveling from one floor to the next (*Id.* 60:20-61:7). Mr. Honan remembers that the top layer of the caulking material used to fill the expansion joint was a "gray color" (*Id.* 64:15-22). This color was "specified and approved by shop architects" after Mr. Honan forwarded the architects a "submittal" he received from his subcontractor (*Id.* 65:23-66:6). The "submittal" was based on a list of acceptable products in the work specifications (*Id.* 64:23-65:22) and the color selection is typically "not the responsibility of the construction manager" (*Id.* 67:11-15). Hunter Roberts completed its work on the Pier 17 project in September 2017 (*Id.* 43:9-11).

On February 4, 2022, the deposition of George Giaquinto was held. Mr. Giaquinto was the Senior Vice President of Development for Howard Hughes on the date of plaintiff's accident (See George Giaquinto

work was performed and accepted by the Moving Defendants herein. The Honorable Frank Nervo denied the motion, stating that liability could not be determined without the completion of discovery and that the premise owners' approval of Hunter Roberts' work did not immunize Hunter Roberts from liability for conditions it admits it created. Finally, Justice Nervo found that an issue of fact remained whether Hunter Roberts created a trap-like condition because the caulking area was the same color as the concrete (*Id.*).

**158479/2019 ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION**
Motion No. 008

Page 3 of 8

3 of 8

Deposition, NYSCEF Doc. #490, 9:10-10:14). Mr. Giaquinto's general functions included "[t]o entitle [and] oversee the design, construction and development of specific projects for the New York region" (*Id.* 10:4-8). Mr. Giaquinto stated that the bulk of Hunter Roberts' work on the Pier 17 building was completed in March 2017, with the Moving Defendants receiving a Temporary Certificate of Occupancy in September 2017 (*Id.* 19:13-20:9). Howard Hughes would conduct weekly project meetings and inspect with Hunter Roberts its work on the premises and, if Howard Hughes saw an unsafe condition, it would tell Hunter Roberts to address it (*Id.* 18:15-21; 24:14-19; 27:4-11). After Hunter Roberts delivered the building to Howard Hughes (*Id.* 31:7-14; 38:10-24), South Street entered into a lease agreement with NEP on October 3, 2017 (See Lease Agreement, NYSCEF Doc. #494). Even though Hunter Roberts still needed to complete minor items—a "punch list"— which carried their presence on the premises into early 2018 at the time of plaintiff's accident, the premises had been turned over to South Street and subsequently leased to NEP (See George Giaquinto Deposition, NYSCEF Doc. #490, 20:10-17; 21:6-14).

Mr. Giaquinto further testified that, pursuant to the lease agreement between South Street and NEP, the Moving Defendants reserved the right to complete post-delivery work, which they hired GTL to perform (*Id.* 31:24-32:18). Under the lease agreement, the Moving Defendants also approved NEP's general contractor, Construction Management, to perform improvements within the leased premises (*Id.* 34:4-18). The leased premises was approximately 1/6th of the total square footage of the third floor or 18,271 square feet of the same (*Id.* 39:10-16). A demising wall separated the leased premises from the rest of the third floor (*Id.* 39:22-40:5).

On April 1, 2022, the deposition of Raymond DeMartini was held. Mr. DeMartini is the Director of Support Services for NEP who manages the NEP buildings and their maintenance (See Raymond DeMartini Deposition, NYSCEF Doc. #492, 10:12-11:12). His functions involve hiring different trades to perform whatever work was required (*Id.* 11:13-21). Mr. DeMartini confirmed that NEP rented a partial space of the third floor of the Pier 17 premises and that the space was empty except for the base building system (*Id.* 14:6-17). For the space's construction, NEP contracted with Cross Management to be the project and construction manager of the leased premises (*Id.* 15:4-16; 16:5-12). In turn, Cross Management brought in their subcontractors (*Id.* 18:24-19:8). He learned of plaintiff's accident through Tim Austin, the contact person from Cross Management (*Id.* 26:22-27:10).

On February 18, 2022, the deposition of Timothy Austin was held. Mr. Austin was the project manager for Cross Management on the date of plaintiff's accident (*See* Timothy Austin Deposition, NYSCEF Doc. #14:2-4; 14:13-16). Mr. Austin characterized Cross Management's project at the South Seaport premises as an interior fit-out project (*Id.* 27:7-12). He recalled that Hunter Roberts did not perform any work within NEP's leased premises during the time Cross Management was there (*Id.* 38:13-40:25). Cross Management hired plaintiff's employer, National Acoustics, as a subcontractor to perform the layout work for the leased premises (*Id.* 63:19-64:3).

On June 16, 2022, the deposition of Michael Schaffer was held. Mr. Schaffer was National Acoustics' carpenter foreman on the construction site on the date of plaintiff's accident (See Michael Schaffer Deposition, NYSCEF Doc. #493, 8:4-12; 9:6-9). Mr. Schaffer stated that National Acoustics began its work in July 2017 when they went to the site to make a rough layout for the final architectural drawings and returned to start performing their drywall and ceiling work in late August or early September (*Id.* 13:23-14:14). National Acoustics only performed work within the leased area and the elevator lobby (*Id.* 18:14-17). When asked if he knew whether Hunter Roberts had any involvement with National Acoustics' work on the leased premises, Mr. Schaffer stated that he did not (*Id.* 18:21-24). Mr. Schaffer also stated that he did not have any interaction with anyone from Hunter Roberts (*Id.* 18:25-3).

A review of plaintiff's deposition shows that plaintiff was a carpenter employed by National Acoustics on the date of his accident (NYSCEF Doc. # 486, 46:16-19). He recalled his accident occurred on October 18, 2017, at around 9 or 10 am on the second or third floor of Pier 17 (*Id.* 62:14-63:20). On the date of the accident,

**158479/2019 ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION**        **Page 4 of 8**
Motion No. 008

4 of 8

plaintiff arrived on-site around 7:30 or 8am and was assigned by National Acoustics' foreman, Michael Schaffer, to frame walls (*Id.* 85:6-13; 86:4-8). He grabbed one of the ladders provided by National Acoustics to begin working soon after he arrived (*Id.* 115:22-116:5). Plaintiff placed the ladder on what he thought and appeared to be concrete foundation, as there was no difference in appearance between the floor he was standing on and the area where he placed the ladder (*Id.* 123:2-17). Before climbing the ladder, plaintiff checked the ladder's surroundings, ensured that it was locked, and checked it for sturdiness (*Id.* 119:5-120:19). Plaintiff placed the ladder right up against the curtain wall (*Id.* 125:25-126:3). He then proceeded to go up the ladder and the next thing he knew the ladder shifted and he was thrown off (*Id.* 140:3-8). The front of the ladder had collapsed into the fire safing material, shifting and throwing plaintiff off (*Id.* 141:23-142:5).

In support of their opposition to the Moving Defendants' motion, plaintiff has submitted an expert report by Herbert Heller Jr., a licensed and registered professional engineer with over 45 years of experience in construction site safety and construction procedures (See NYSCEF Doc. #539, page 2). A review of the report shows that the Mr. Heller concludes that, after a review of the evidence and pertinent documents exchanged in this matter, it is his expert opinion—within a reasonable degree of engineering certainty—that "the caulking over the expansion joint, without an additional cover and/or a barrier, created a trap-like and hazardous condition on the floor which caused the ladder legs to puncture the caulking causing [plaintiff] to lose his balance and fall to the floor and become injured" (*Id.* page 5). Mr. Heller's report further states that the

> "[a]pplication of caulking over a wide gap does not result in a sturdy surface suitable for walking or placement of furniture or equipment over it. Additional protection is necessary to ensure that the gaps sealed with caulking are not hazardous, such as, for example, a metal covering over the gap that can be secured to the wall and/or window frame. At a minimum, the areas with wide gaps that have caulking placed over the soft fire-safing material should be distinctly marked <u>and</u> guarded by barriers or other equipment in order to prevent the people from stepping on, or placing materials, furniture and/or equipment onto, the unprotected, uncovered caulking" (*Id.* page 4-5).

Here, the crux of the matter centers on whether a "means and methods" or a "dangerous condition" analysis applies to this case. The Court finds that this case falls under the "dangerous condition" standard. The evidence demonstrates that plaintiff's accident occurred when plaintiff placed the front legs of his work ladder into an unmarked/uncovered expansion joint, causing the ladder to puncture through the caulking material in the expansion joint, and thus leading to plaintiff's fall from the ladder. Plaintiff has demonstrated through Mr. Heller's expert report that the caulking over the expansion joint created a hazardous condition when additional protections were not in place to ensure that the expansion joint was sturdy and/or marked to prevent equipment from being placed on it. Lastly, and most importantly, the evidence reveals that Hunter Roberts performed the caulking work prior to turning the premises over to the Moving Defendants on or about September 2017. Therefore, once Hunter Roberts turned the premises over to the Moving Defendants, the unprotected/unmarked caulking condition became a premises condition on the property, and therefore the circumstances of this case cannot fall under a "means and methods" analysis.

Next, the Moving Defendants' argument that this matter is similar to the facts in *Murphy*, supra, is unavailing. In *Murphy*, plaintiff, who was engaged in the installation of office partitions and furniture at 80 Pine Street, was caused to trip over a "stub up" protruding from the floor while moving tools and materials from one work area to the next. While the Second Department, stated, in relevant part, that "the methods or materials of the work" were at issue in that case, *Murphy* differs from the case at bar in that the Pier 17 premises were turned over to the Moving Defendants after Hunter Roberts completed its work. In *Murphy*, the electrical

[* 5]

contractor's work was still ongoing (*See* Deposition of Representative of Electrical Contractor, Index Number 500094/2015, NYSCEF Doc. #415, 15:2-16).

Therefore, in light of this Court's determination that this matter falls under the "dangerous condition" analysis, that portion of the motion seeking summary judgment on plaintiff's *Labor Law § 200* and common-law negligence will be denied based on the Moving Defendants' failure to argue and establish a *prima facie* entitlement to summary judgment under the "dangerous condition" standard.

### B. *Summary Judgment on Contractual Indemnification*

Moving Defendants argue they are entitled to summary judgment on their claim for contractual indemnification against Hunter Roberts based upon the terms of the written agreement between Hunter Roberts and Seaport Management. Specifically, the Moving Defendants argue that there is no dispute that (1) plaintiff's accident is related to the fireproofing in the expansion joint, (2) that the installation of the fireproofing in the expansion joint was within the scope of Hunter Roberts's work, and (3) that a subcontractor hired by Hunter Roberts performed the work. The Moving Defendants argue that, under the terms of the agreement, Hunter Roberts is obligated to indemnify and hold Moving Defendants harmless against plaintiff's claims based on the language of the contract.

In opposition, Hunter Roberts argues that Moving Defendants' motion is procedurally defective in that the Moving Defendants failed to attach complete contracts to their moving papers. On the merit, Hunter Roberts argues that the motion should be denied as premature because a potential non-party witness's testimony has yet to be taken. Specifically, Hunter Roberts states that the witness, Keith Howe, is the apprentice identified by National Acoustics' counsel who will testify regarding the Moving Defendants' notice of the caulking condition in the expansion joint. Lastly, Hunter Roberts argues that the Moving Defendants' motion should be denied because the Moving Defendants approved and accepted Hunter Roberts' work after an inspection and the premises had been turned over to the Moving Defendants two months prior to plaintiff's accident.

In reply, the Moving Defendants argue that Hunter Roberts' argument that denial is warranted because the motion fails to attach the relevant contracts is meritless. First, they argue that they attached the Construction Management Agreement between the parties under Exhibit U of the moving papers. Secondly, the Moving Defendants contend that the contract was already attached as Exhibit P to Hunter Roberts' summary judgment motion under Motion Sequence #3. Next, the Moving Defendants contend that Hunter Roberts' argument that the motion is premature should be rejected because Hunter Roberts cannot cite its own failure to obtain the deposition of the non-party witness to justify the denial of the present motion. Lastly, the Moving Defendants argue that this Court has already found under Motion Sequence #3 that the approval of Hunter Roberts' work was insufficient to immunize it from liability for conditions it admitted it created.

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (*Drzewinski v. Atlantic Scaffold & Ladder Co.,* 70 N.Y.2d 774, 515 N.E.2d 902, 521 N.Y.S.2d 216 [1987] citing *Margolin v. New York Life Ins. Co.,* 32 N.Y.2d 149, 153, 297 N.E.2d 80, 344 N.Y.S.2d 336 [1973]. "[A] court may render a conditional judgment on the issue of indemnity pending determination of the primary action in order that the indemnitee [may] obtain the earliest possible determination as to the extent to which [the indemnitee] may expect to be reimbursed" *Masciotta v. Morse Diesel Intl.,* 303 A.D.2d 309, 310 [1st Dept. 2003]). Even where there are issues of fact as to an indemnitee's active negligence, an aware of conditional indemnification is warranted where the indemnification provision does not violate the General Obligations Law (*See Cuomo v. 53rd & 2nd Assoc., LLC,* 111 A.D.3d 548 [1st Dept. 2013]).

**158479/2019 ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION**
**Motion No. 008**

Page 6 of 8

Here, the Construction Management Agreement dated November 22, 2013, between Hunter Roberts and Seaport Management states that:

"8.1 [Hunter Roberts] shall to the fullest extent permitted by law defend, indemnify and hold harmless [Seaport Management], Owner [sic] their direct and indirect parents and subsidiaries, all of their respective affiliated entities, successors and assigns, and all of their respective current or future directors, officers, agents … from and against:

8.1.1. all claims … and causes of action of every kind and description … arising out of or resulting from, one or more of the following: (a) any negligent act or omission or willful misconduct of [Hunter Roberts] or one of its Subcontractors (of any tier) … in the performance of the Work; … or (d) any accident, lack of safety, or unsafe condition related to [Hunter Roberts' and its subcontractors'] performance of the Work that causes any personal injury or damage to any persons or property (other than the confirming Work itself) …" (NYSCEF Doc. # 484, page 2).

Here, the Court finds that the circumstances of this case are sufficient to entitle Moving Defendants to conditional summary judgment on their claim for contractual indemnity against Hunter Roberts. The work in the expansion joint was admittedly the responsibility of Hunter Roberts, however the indemnity is conditional because "a jury must assess [Moving Defendants'] liability, if any, based upon their purported failure to discover the condition following [Hunter Roberts'] completion" of its work (*See Gervasi v. FSP 787 Seventh LLC*, 228 A.D.3d 459, 461, 213 N.Y.S.3d 299 [1st Dept. 2024]).

Next, the Moving Defendants argue that they are also entitled to summary judgment on their contractual indemnification claim against NEP because the terms of the Lease between the parties entitles the Moving Defendants to a defense and indemnification for any occurrence within the premises.

In opposition, NEP argues that the indemnification provision within the Lease was not triggered because the condition that brought about plaintiff's accident did not arise out of any conduct or negligence by NEP. Specifically, NEP argues that a review of the full indemnity provision shows that the clause is triggered only as a result of "any default or breach" by NEP or its "gross negligence." And therefore, NEP argues that, because the work that brought about plaintiff's accident was performed by Hunter Roberts—who had no relationship with NEP—the indemnity clause was not triggered.

In reply, the Moving Defendants contend that there is no requirement in the Lease that plaintiff's accident be caused by the work or fault of NEP to trigger the contractual indemnification clause. Rather, the Moving Defendants point to *§ 10.02(a)(y)* of the Lease which reads that NEP would indemnify the South Street Seaport Partnership for "any occurrence … within the Premises." Therefore, the Moving Defendants argue that, because plaintiff's claims arise out of an occurrence that took place within the leased premises, they are entitled to indemnification from NEP.

Here, the Lease between South Street and NEP effective October 3, 2017, states that;

"Tenant covenants to defend and indemnify Landlord and the other Landlord Indemnified Parties and save them harmless … from and against any and all Claims … in connection with all losses, including loss of life, personal injury and/or damage to property, to the extent arising from or out of … (y) **any occurrence … within the premises** …, to the fullest extent permitted by law" (emphasis added) (NYSCEF Doc. 494, page 42).

158479/2019 ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION
Motion No. 008

Page 7 of 8

[* 7]

In light of the broad language in the indemnification provision, the Court finds that the Moving Defendants are entitled to conditional summary judgment on their claim for contractual indemnity against NEP. The provision is triggered because NEP has agreed to indemnify the Moving Defendants for "any occurrence ... within the premises"; however, "the indemnity is conditional because a jury must assess [Moving Defendants'] liability, if any, based upon their purported failure to discovery the condition following [Hunter Roberts'] completion" of their work (*See Gervasi*, supra, at 228 A.D.3d 461).

Accordingly, it is

**ORDERED:** The portion of Defendants/Third-Party Plaintiffs South Street Seaport Limited Partnership's, Seaport Management Development Company, LLC's, and The Howard Hughes Corporation's motion pursuant to *CPLR § 3212* for an Order dismissing plaintiff's negligence and *Labor Law § 200* claims against them is denied; and it is further,

**ORDERED:** The portion of Defendants/Third-Party Plaintiffs South Street Seaport Limited Partnership's, Seaport Management Development Company, LLC's, and The Howard Hughes Corporation's motion pursuant to *CPLR 3212* which seeks an Order granting them summary judgment on their cross-claim for contractual indemnification against defendant Hunter Roberts Construction Group, LLC is granted to the extent that movants are awarded conditional contractual indemnification; and it is further,

**ORDERED:** That the portion of Defendants/Third-Party Plaintiffs South Street Seaport Limited Partnership's, Seaport Management Development Company, LLC's, and The Howard Hughes Corporation's motion pursuant to *CPLR 3212* which seeks an Order granting them summary judgment on their third-party cause of action for contractual indemnification against defendant/third-party defendant NEP IMAGE GROUP, LLC is granted to the extent that movants are awarded conditional contractual indemnification.

This constitutes the Decision and Order of this Court.

_____7/ 11 /2025_____
**DATE**

_____
**LETICIA M. RAMIREZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**158479/2019  ARGUELLES, ANTHONY vs. HUNTER ROBERTS CONSTRUCTION**
**Motion No. 008**

Page 8 of 8

8 of 8

[* 8]